SCOTT+SCOTT LLP
ARTHUR L. SHINGLER III (181719)
MARY K. BLASY (211262)
DAVID H. GOLDBERGER (225869)
600 B Street, Suite 1500
San Diego, CA  92101
Telephone:  619-233-4565
Facsimile: 619-233-0508
ashingler@scott-scott.com
mblasy@scott-scott.com
dgoldberger@scott-scott.com
  – and –
DAVID R. SCOTT
P.O. Box 192
156 South Main Street
Colchester, CT  06415
Telephone:  860-537-3818
Facsimile: 860-537-4432
drscott@scott-scott.com

*Lead Counsel for Lead Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| SHARON HODGES, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AKEENA SOLAR, INC., BARRY CINNAMON and GARY EFFREN,<br><br>Defendants. | No.  C-09-02147 JW-RS<br><br>LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br><br>Judge: Hon. James Ware<br><br>Hearing Date:  May 24, 2010<br>Time:  9:00 am<br>Dept:  Courtroom 8 |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................1

II.    THE ARGUMENTS AND EXHIBITS AT ISSUE................................................................1

III.   LEGAL STANDARD............................................................................................................7

IV.    ARGUMENT .......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Levenstein v. Salafsky,*
   164 F. 3d 345 (7th Cir. 1998) ..................................................................................................8

*Carter v. Clark County,*
   253 Fed. Appx. 638 (9th Cir. 2007)..........................................................................................7

*In re Connetics Corp. Sec. Litig.,*
   No. C 07-2940, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008)................................................7

*In re Converium Holding AG Sec. Litig.,*
   No. 04 Civ. 7897, 2007 WL 2684069 (S.D.N.Y. Sept. 14, 2007)............................................9

*In re Gilead Scis. Sec. Litig.,*
   536 F.3d 1049 (9th Cir. 2008) ..................................................................................................7

*In re Immune Response Sec. Litig.,*
   375 F. Supp. 2d 983 (S.D. Cal. 2005).......................................................................................7

*In re LDK Solar Sec. Litig.,*
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ....................................................................................8

*In re Petco Animal Supplies Inc. Sec. Litig.,*
   No. 05-CV-0823, 2005 WL 5957816 (S.D. Cal. Aug. 1, 2005) ...............................................7

*In re Scottish Re Group Sec. Litig.,*
   524 F. Supp. 2d 370 (S.D.N.Y. 2007).......................................................................................9

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ........................................................................................ *passim*

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,*
   969 F.2d 1384 (2nd Cir. 1992)................................................................................................11

*Lovelace v. Software Spectrum Inc.,*
   78 F.3d 1015 (5th Cir. 1996) ..................................................................................................11

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ....................................................................................................8

*Silverstein v. E360Insight, LLC,*
   No. CV 07-2835, 2008 WL 1995217 (C.D. Cal. May 5, 2008) ...............................................7

*Siracusano v. Matrixx Initiatives, Inc.,*
   585 F.3d 1167 (9th Cir. 2009) ..................................................................................................9

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...........................................................................................9

*State Farm Fire & Cas. Co. v. Westchester Inv. Co.*,
    721 F. Supp. 1165 (C.D. Cal. 1989) ...............................................................................11

*Tercica, Inc. v. Insmed Inc.*,
    No. C 05-5027, 2006 WL 1626930 (N.D. Cal. June 9, 2006) ..................................11

*U.S. v. Mariscal*,
    285 F.3d 1127 (9th Cir. 2002) .......................................................................................10

*U.S. v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ......................................................................................7, 8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-5(e)..........................................................................................................................8

Fed. R. Civ. P.
    Rule 12 ............................................................................................................................10
    Rule 12(b)(6) ................................................................................................................1, 7
    Rule 12(f) .......................................................................................................................1, 7

Fed. R. Evid.
    Rule 201 ..........................................................................................................................11
    Rule 201(b)(1)..................................................................................................................8

LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE         iii
09-cv-02147-JW-RS

## I. INTRODUCTION

Lead Plaintiffs Sharon Hodges, Joel Gentleman and David H. Gordon object to and move to strike under Rule Fed. R. Civ. P. 12(f) defendants Akeena Solar, Inc.'s ("Akeena"), Barry Cinnamon's, and Gary Effren's ("Defendants") request for judicial notice of Exhibits 3, 5, 6, 8, 9, 11 and 21 to the Request for Judicial Notice in Support of Defendants' Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws on the grounds that matters in those documents, other than that what Lead Plaintiffs pled, cannot properly be considered in ruling on a motion to dismiss. Lead Plaintiffs also move to strike the "factual" assertions drawn from those exhibits in Defendants' Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws ("Defs.' Mtn.") (including certain *mis*interpretations cited as "fact") and other unsubstantiated "factual" assertions Defendants improperly raise in their motion to dismiss **on the pleadings**. Defendants improperly request the Court take judicial notice of at least seven exhibits and more than 28 "factual" assertions drawn largely from those exhibits in connection with their Rule 12(b)(6) motion to dismiss **before discovery has commenced** in an attempt to interject hand-selected "factual" proffers to contradict allegations in Lead Plaintiffs' Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"). Defendants incorrectly suggest that the Court can take judicial notice of these exhibits and "facts" to decide hotly contested issues in their favor, even dispositive matters of fact, such as falsity, scienter, loss causation and their affirmative defense to insider trading. Defendants' request for judicial notice should be denied, and the Court should strike the impermissible factual propositions and inferences derived from them from consideration in ruling on Defendants' motion to dismiss.

## II. THE ARGUMENTS AND EXHIBITS AT ISSUE

The following arguments and exhibits were improperly submitted in support of Defendants' motion to dismiss. While the Court can take judicial notice of properly authenticated documents that have been incorporated into the Complaint and facts that are subject to judicial notice (*Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)), it cannot take judicial notice of disputed matters of fact that are not alleged in the Complaint, even those contained in public documents the Court can

LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE  1

No. C-09-02147 JW-RS

otherwise take judicial notice of. These matters outside the Complaint are not proper subjects of judicial notice and are offered as inadmissible hearsay.

So, for instance, if the Complaint references an analyst report, the Court can properly take judicial notice of that analyst report, for the purpose of ascertaining what that report does and does not say. But Defendants seek more here. In some instances, they ask the Court to accept the analyst report "for the truth of the matter asserted therein" to contradict the Complaint's allegations. In some instances, Defendants urge that because an analyst states in a report that he/she was told "x" by Defendants, the Court can take judicial notice of the "fact" that the entire investment community was advised of "x" by Defendants. That is improper. In other instances, Defendants attempt to use the fact that one analyst stated "y," as a "fact" the Court can take judicial notice of that the entire investment community was told "y" by that analyst. That, too, is improper at this stage of the proceedings.[1] A third misuse of the exhibits occurs where Defendants *mis*interpret what a document the Court could otherwise take judicial notice of says and attempt to have judicial notice taken of their interpretation as "fact." This, too, is improper. Simply stated, at this stage of the proceedings, *prior to the commencement of discovery*, Defendants are not permitted to interject extraneous documents as "evidence" to contradict the Complaint's allegations, to resolve factual disputes, or as "facts" the Court can properly draw inferences from (or weigh inferences drawn from).

This includes the resolution of conflicting inferences that can be drawn *from the Complaint's allegations* in determining whether Lead Plaintiffs have properly alleged scienter. While *Tellabs* and other important decisions require the Court to "weigh" different inferences that can be drawn *from the Complaint's allegations* to determine whether the Complaint's scienter allegations are compelling enough, this neither requires nor permits the introduction of hearsay or the examination of unauthenticated "evidence" from outside the four corners of the Complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007)All that is at issue at this stage of the proceedings

---

[1] While Defendants argue efficient market hypothesis for this, we are not at the stage in the proceedings where facts can be adjudicated, especially facts requiring expert testimony.

the Complaint's allegations – and the inferences that can be properly drawn from *those allegations* – and only they may properly be considered. Everything else is just a preview of the case Defendants intend to try to prove at later stages in the proceedings.

As such, the following factual proffers Defendants make in their Motion to Dismiss which put forth as "fact" matters outside the four corners of the Complaint should be stricken. Taking judicial notice of these "facts" would be improper and Lead Plaintiffs request that the following arguments and exhibits be stricken and Defendants' request for judicial notice of these exhibits be denied:[2]

A. "Akeena….*successfully managed* many of the challenges presented to a new public company in the rapidly growing solar industry." (Defs.' Mtn. at 1) Contradicts Complaint ¶¶76-100, especially ¶¶ 94 and 99 disclosing that Akeena had received a NASDAQ delisting threat in October 2008 and it stock had dropped below $2 per share by December 2008.

B. Akeena "*increased its line of credit with Comerica Bank* from $7.5 million to $25 million…." (Defs.' Mtn. at 1) Contradicts Complaint ¶¶ 14, 18, 29, 39, 42, 62, 73, 75(k), 81, 90, 96 and states contested matters as "fact."

C. "*[I]f the market expected that backlog would automatically convert to revenue for 4Q 07, revenue expectations would have been adjusted accordingly*. Instead *revenue forecasts remained constant and Akeena met and indeed exceeded revenue expectations for the fourth quarter and fiscal year 2007, which the Complaint does not dispute*" and "*Akeena never gave any guidance on an expected profit or loss for 4Q 2007*." (Defs.' Mtn. pp. 2-3, 12) Contradicts Complaint ¶¶ 12, 22, 31, 33, 56, 74, 75(a)(h)(i), 82, 85 and argues as "fact" matters outside the Complaint, including what Akeena's forecasts were, what others in the markets' "expectations" for Akeena were, and what Akeena gave guidance on and to whom.

D. Akeena *"explicitly and unequivocally publicly disavowed backlog as a meaningful metric"* and "*the investment community incorporated that data – along with the Company's growth estimates and other information – into its revenue expectations for Akeena and Akeena exceeded those expectations."* (Defs.' Mtn. at 3) Contradicts ¶¶ 12-14, 22, 40-44, 55, 56, 75(a), 77, 82, 85 and assumes "facts" neither alleged nor proper for judicial notice.

E. The "Complaint alleges Defendants were secretly aware of certain unspecified 'design defects' − *defects of which, to this date, Akeena is not aware*." (Defs.' Mtn. at 3)

---

[2] The ordering of the list is largely taken chronologically from Defendants' motion to dismiss except where certain references to certain exhibits were repeated later in the brief. Those have been grouped together and presented as one entry.

LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

3

No. C-09-02147 JW-RS

Contradicts ¶¶ 11, 22, 57, 59, 60, 72, 74, 75(f), 89, 100 and assumes "facts" neither alleged nor proper for judicial notice.

F. "Akeena was operating in the face of a worldwide shortage of silicon…and…*the Suntech agreement addressed that critical supply issue*, *a fact which was fully disclosed*. Additionally, although the Complaint alleges Defendants withheld the *limited revenue impact* of the Suntech licensing agreement for 2008, *the market was aware of this information contemporaneously with that announcement*" and "*[b]y entering into the Suntech supply agreement, Akeena was able to secure a fixed price for those components, the availability and price of which could have severely impacted Akeena's operations*." (Defs.' Mtn. at 3, 16)  (Defs.' Mtn. at 3) Contradicts ¶¶15, 19, 22, 23, 39, 50-51, 57, 59-60, 65, 66-73, 75(b-e), 82, 85, 87 and assumes "facts" neither alleged nor proper for judicial notice.

G. The "Complaint alleges Defendants withheld key terms of its Comerica loan agreement *at a time when the terms were not final or ultimately divergent from the Company's other loan covenants*." Contradicts ¶¶ 18, 19, 46, 58, 61, 62, 66, 70, 71, 81, 90, 96 and assumes facts neither pled nor the proper subject for judicial notice.

H. "Although the stock traded at a relatively low price during the spring of 2008, *this was a reflection of the volatility of the stock due to the uncertain outlook of the Company, uncertainty around whether the federal solar tax credit would be extended beyond 2008 (a widely known and critical concern), and the economic crisis that was restricting consumers' access to credit*." (Defs.' Mtn. at 4) Contradicts ¶¶ 10-15, 18-19, 20, 23, 45, 59, 63, 73, 80-100, 108 and assumes "facts" neither alleged nor proper for judicial notice.

I. Cinnamon sold stock during the Class Period *"pursuant to a validly executed 10b5-1 plan in which he ceded control over his stock sales to a broker."* (Defs.' Mtn. at 4) Not alleged in Complaint and assumes contested "facts" neither alleged nor proper for judicial notice.

J. On 11/17/07, "Effren told analysts the Company would not prospectively provide a definite backlog number…*because of the growing commercial side of the business and the Company's belief that backlog was not a meaningful metric*."  (Defs.' Mtn. at 5) Contradicts Complain ¶¶ 12-14, 22, 40-44, 55, 56, 75(a), 77, 82, 85 and assumes "facts" neither alleged nor proper for judicial notice.

K. "*Analysts also projected $9.5 million in revenue for 4Q 2007*," "on November 13, 2007, *the Company and analysts were contemporaneously predicting around $9.5 million in revenue for 4Q 2007,*" and "[n]o investor could have possibly believed that Akeena would convert the $13.6 million in backlog into revenue by the end of 4Q 2007 as that belief was inherently inconsistent with the 4Q revenue projection given the same day as the conference call. *Indeed, analyst revenue projections for 4Q remained at $9.5 million even after Mr. Effren's November 13 statement about backlog,*" and "Akeena obviously had strong orders in 2007 – *strong enough to exceed its own and analysts' expectations*."  (Defs.' Mtn. at 5, 11, 12 13 and Ex. 3) Assumes "facts" neither alleged nor proper for judicial notice and the Exhibit cannot be judicially noticed for the truth of the matter stated.

L. "*Ultimately, Akeena exceeded its own guidance and analysts' expectations*" (Defs.' Mtn. at 5) Assumes "facts" neither alleged nor proper for judicial notice.

M. "*In August 2007, Jesup & Lamont reported that the solar industry had been negatively impacted in recent years by the shortage of silicon and that shortages were going to persist, resulting in "firm" pricing likely for the second half of 2007*." (Defs.' Mtn. at 6 and Ex.5 at 3) Assumes "facts" not alleged in Complaint and exhibit cannot be judicially noticed for truth of the matter asserted.

N. Ex. 6 (stock price chart) – Not alleged in Complaint and unauthenticated exhibit cannot be judicially noticed for truth of the matter asserted.

O. "Although both companies were charging a 'premium' price compared to its straight solar module sales, *this premium represented the additional parts being sold for the framing, wiring and grounding components of the product*. Additionally, *Akeena chose* Kyocera and Suntech over second and third tier suppliers *because they were more established and more likely to honor their warranties in 20-30 years*," and "Additionally*, any 'premium' paid for the panels accounted for the fact Defendants were receiving a completely integrated system that also contained their own proprietary frames with built-in wiring and grounding*," and "*Akeena also disclosed* that it had entered the supply agreement with Suntech, of all solar panel suppliers, *because it wanted to choose a partner that would honor supply guarantees for twenty years*." (Defs.' Mtn. at 6, fn 2, 16 and Ex. 7 at 12). Not alleged in Complaint and exhibit cannot be judicially noticed for truth of the matter asserted...

P. "*Jesup & Lamont issued a report [on 7/3/07] stating that the licensing agreement with Suntech, according to the Company, would likely provide 'relatively small revenue improvements, around $1 million in 2008*" and "Quite to the contrary of the Complaint's characterization, *the Suntech supply agreement was a business move that provided Akeena with a competitive advantage and the sustained ability to obtain a dependable supply of its proprietary solar modules*," "Extreme pricing and/or lack of acquisition of sufficient amounts of polysilicon would inhibit Akeena's ability to procure and sell its products . . . . The recent agreement with [Suntech] alleviates this concern somewhat . . .", "The minimal licensing revenue projected for 2008 by the Suntech license agreement *had been previously disclosed on January 3, 2008 (the day after the press release) in an analyst report*," "*Akeena is estimating the STP agreement will result in approximately $1 million in additional revenue for 2008 given the demand picture at this time.* Thus, contrary to the Complaint's insinuation that investors expected a larger revenue stream from the Suntech license agreement, *investors were cognizant of the limited impact of the agreement the day following Akeena's announcement* (when the stock closed higher than the day of announcement," "Contrary to plaintiffs' assertion that Mr. Cinnamon 'finally conceded' on March 13 that revenue on the Suntech licensing agreement would be relatively small, less than $1 million in 2008, *an analyst report issued January 3, 2008* and cited in the Complaint *referenced this same figure two months earlier*." (Defs.' Mtn. at 7, 16-18, 20-21 and Ex. 8 at 2) Not alleged in Complaint and exhibit cannot be judicially noticed for truth of the matter asserted.

LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE   5

No. C-09-02147 JW-RS

Q. "*By November, Jesup & Lamont noted that this shortage was at risk of lasting perhaps into 2010*." (Defs.' Mtn. at 6 and Ex. 3 at 8). Not alleged in Complaint and exhibit cannot be judicially noticed for truth of the matter asserted.

R. "Although both companies were charging a 'premium' price compared to its straight solar module sales, *this premium represented the additional parts being sold for the framing, wiring and grounding components of the product*. Additionally, Akeena chose Kyocera and Suntech over second and third tier suppliers *because they were more established and more likely to honor their warranties in 20-30 years*." (Defs.' Mtn. at 6 and Ex. 7 at 12) Not alleged in Complaint and exhibit cannot be judicially noticed for truth of the matter asserted.

S. "*Jesup & Lamont issued a report [on 1/3/08] stating that the licensing agreement with Suntech, according to the Company, would likely provide 'relatively small revenue improvements,' around $1 million in 2008, but would enhance gross margins*." (Defs.' Mtn. at 6 and Ex. 8 at 2) Not alleged in Complaint and exhibit cannot be judicially noticed for truth of the matter asserted.

T. "*On January 11, 2008, the Company reached final agreement* on the terms of the credit line increase and executed the final loan documentation." (Defs.' Mtn. at 7 and Ex. 9) Not alleged in Complaint and Exhibit cannot be judicially noticed for truth of the matter asserted.

U. "[B]ecause Akeena – and not the customer –was entitled to the rebate, *an analyst noted* this delay created 'some working capital strain on the installers' *but did not indicate that it would impact signed contracts or backlog*." (Defs.' Mtn. at 13 and Ex. 11 at 3) Not alleged in Complaint and neither exhibit nor interpretation can be judicially noticed for truth of the matter asserted.

V. "The only support posited for the claim that Andalay suffered from design defects is a post-Class Period analyst report made on August 5, 2008 *in which an analyst reported overhearing from an installer that the panels had defects*." (Defs.' Mtn. at 14) Assumes "facts" not alleged in Complaint.

W. "Mr. Effren, however, only held unvested stock options in the Class Period, *and therefore had no incentive to increase the stock price in the short term. Indeed, his first option grant did not first vest until September 2008*," and "*[w]ere it true that Mr. Effren engaged in a scheme to inflate the stock price, he would have purchased and sold Akeena stock on the open market. The absence of such transactions negates an inference of scienter.*" (Defs.' Mtn. at 23 and Exs.18-19). Not alleged in Complaint and neither exhibit nor interpretation can be judicially noticed for truth of the matter asserted.

X. "*The two settlement options were roughly equivalent economically to Mr. Cinnamon*." (Defs.' Mtn. at 23) Assumes facts not alleged in Complaint and conflicts with ¶¶ 10, 16, 20, 30.

Y. "*[A]ll of the sales were pursuant to a 10b5-1 trading plan*" (Defs.' Mtn. at 24) Assumes "facts" not alleged in Complaint and conflicts with Complaint ¶¶ 20-21, 29, among others.

Z. "[A]llegations that Mr. Cinnamon tried to increase the stock price so he could sell fewer shares are belied by *the fact that pursuant to the plan, the broker had sole discretion (pursuant to a formula under the plan) on when to sell Mr. Cinnamon's shares*." (Defs.' Mtn. at 24 and Ex. 21 at 3) ) Not alleged in Complaint, conflicts with Complaint ¶¶ 20-21, 29, among others, and misstates what the exhibit states.

AA. "All of the stock sales cited in the Complaint *were made pursuant to this pre-established non-discretionary trading plan*." (Defs.' Mtn. at 24 and Exs. 22-23) Assumes as "fact" matters not alleged in Complaint and conflicts with Complaint ¶¶ 20-21, 29, among others.

## III. LEGAL STANDARD

Rule 12(f) provides that "on motion made by a party either before responding to a pleading … [t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008); *see also In re Connetics Corp. Sec. Litig.*, No. C 07-2940, 2008 WL 3842938, at *1 (N.D. Cal. Aug. 14, 2008) (following *Gilead*). Consequently, "unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials)." *Silverstein v. E360Insight, LLC*, No. CV 07-2835, 2008 WL 1995217, at *3 (C.D. Cal. May 5, 2008); *see also Carter v. Clark County*, 253 Fed. Appx. 638, 640 (9th Cir. 2007) ("The district court improperly relied upon the contract . . . in ruling on the Rule 12(b)(6) motion because the contract was presented outside the pleadings.") (citing *City of Los Angeles*, 250 F.3d at 688). Furthermore, "if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

The Court cannot consider matters outside the complaint with exceptions for (1) authenticated documents that have been incorporated into the complaint and (2) facts that are subject

1  to judicial notice. *See City of Los Angeles*, 250 F.3d at 689-90³ On a motion to dismiss, the court
2  may consider a document that is either "attached to the complaint" or "incorporated by reference"
3  therein, as long as it "forms the basis of the plaintiff's claim" and is "extensively" referred to and
4  relied upon in the complaint. *Ritchie*, 342 F.3d at 908. **Incorporation by reference "is a narrow**
5  **exception . . . It is not intended to grant litigants license to ignore the distinction between motions**
6  **to dismiss and motions for summary judgment."** *Levenstein v. Salafsky,* 164 F. 3d 345, 347 (7th
7  Cir. 1998). ⁴ The Court should not consider "factual" propositions contained within exhibits to a
8  motion to dismiss that were not pled in the Complaint, especially where they are offered "as
9  evidence that Defendants did not commit securities violation[s] . . . considering these documents as
10 part of the pleadings at this stage would expand the 'narrow exception' and eliminate the distinction
11 between a motion for summary judgment and a motion to dismiss." *Ritchie*, 342 F. 3d at 908.

12 With respect to the judicial notice exception, the Ninth Circuit made it clear that "[c]ourts
13 may only take judicial notice of adjudicative facts that are 'not subject to reasonable dispute.' Facts
14 are indisputable . . . only if they are either 'generally known' under Rule 201(b)(1) or 'capable of
15 accurate and ready determination by resort to sources whose accuracy cannot be reasonably
16 questioned.'" *Ritchie*, 342 F.3d at 908-09. The Ninth Circuit has held that a district court may take
17 judicial notice of "undisputed matters of public record" **but not "disputed facts stated in public**
18 **records.**" *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1254 (N.D. Cal. 2008) (citing *City of*
19 *Los Angeles*, 250 F. 3d at 689-90; *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (citing
20 *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). It is reversible error to take judicial notice of

---

³ *See also In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005) (same); *In re Petco Animal Supplies Inc. Sec. Litig.,* No. 05-CV-0823, 2005 WL 5957816, at *3 (S.D. Cal. Aug. 1, 2005) (for instance "a newspaper article, is not suitable for judicial notice"); *In re Countrywide Sec. Litig.*, No. CV-07-05295-MRP OMNIBUS ORDER on Motions Related to the Second Amended Complaint and the Unopposed Motion to Correct the Order of December 1, 2008 (C.D. Cal. April 6, 2009) (Appx. 1) ("The Court cannot take notice of the transcript and accept its identification of the speaker over the SAC's identification without converting Sieracki's motion into one for summary judgment. Fed. R. Civ. Proc. 12(d)").

⁴ All internal citations are omitted and emphasis added, unless otherwise noted.

the "truth" of the contents of such documents. *City of Los Angeles*, 250 F.3d at 688. The PSLRA is consistent with this limitation, allowing consideration of statements referenced in a complaint only where the statements offered are "not subject to material dispute." 15 U.S.C. §78u-5(e); *see also* William W. Schwarzer, *et al.*, *California Practice Guide: Federal Civil Procedure Before Trial*, Ch. 9:219 (TRG 2008) (Public documents can be considered, "but not to prove the truth of their contents."). So, while courts "may take judicial notice of 'matters of public record,'" they cannot do so if the facts contained therein are "subject to reasonable dispute." *City of Los Angeles*, 250 F.3d at 689.

*Tellabs* has not changed the law in this regard. In articulating a standard for assessing scienter, the U.S. Supreme Court recognized that, on a motion to dismiss, the district court is limited to inferences drawn ***from the plaintiff's complaint***: "A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and ***at least as compelling as any opposing inference one could draw from the facts alleged***." 551 U.S. 308, 324 (2007). *Tellabs* is explicit that any "opposing inference" of scienter must be drawn "from the facts alleged," not from facts outside the complaint that defendants choose to offer to create a different plausible scenario in contradiction to plaintiffs' allegations, as Defendants have done here. *Id.; see also South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008) ("*Tellabs* counsels us to consider the totality of circumstances" and "permits a series of less precise allegations to be read together to meet the PSLRA requirement, ***the prior holdings of Silicon Graphics, Vantive, and Read-Rite notwithstanding.***"); and *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1183 (9th Cir. 2009) (same).

Thus, "[d]efendants' arguments [outside the four corners of the complaint] are inappropriate at this stage of the litigation. ***Opposing inferences may only be based on the allegations of the Complaint, which must be taken as true***, and other documents properly before the court on a motion to dismiss." *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 390 n.149 (S.D.N.Y. 2007); *see also In re Converium Holding AG Sec. Litig.*, No. 04 Civ. 7897, 2007 WL 2684069, at *3 (S.D.N.Y. Sept. 14, 2007) ("at this stage of the litigation, a court may not 'weigh the evidence that

LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE    9

No. C-09-02147 JW-RS

1 might be presented at trial'"). It remains "the jury's authority to assess the credibility of witnesses, resolve any genuine issues of fact, and make the ultimate determination whether [defendants] acted with scienter." *Tellabs*, 551 U.S. at 328.

### IV.   ARGUMENT

Plaintiffs do not oppose Defendants' Request for Judicial Notice as to certain exhibits consisting of SEC filings, press releases and/or conference call transcripts, but even as to those, under settled law, the documents offered may *only* be considered for the purpose of determining what statements the documents contain, not to prove the truth of those contents (including whether those documents can be considered "in the public domain"). *U.S. v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002) (judicial notice only appropriate as to "undisputed" matters).  Courts may judicially notice "***undisputed*** matters of public record," but not "***disputed*** facts stated in public records." *City of Los Angeles*, 250 F.3d at 690 (emphasis in the original).  Where exhibits are referenced in the Complaint, judicial notice of them is proper under the "incorporation-by-reference" doctrine. But at the pleading stage, any inferences that may be drawn from the SEC filings, press releases, conference call transcripts or analyst reports must have been pled by Lead Plaintiffs in their Complaint, not put forth as competing factual propositions by Defendants in a motion to dismiss on the pleadings. *Id.* It would be reversible error to take judicial notice of the "truth" of these documents or "factual" propositions because they are just that, documents floating around in the public domain and/or unsubstantiated opinion, not allegations in the Complaint. *Id.* at 689-90.

Defendants completely ignore this Circuit's governing standards concerning judicial notice and Fed. R. Civ. P. 12 and urge the Court to disregard the Complaint's allegations, consider the merits of the contents of their exhibits, ***their sometimes sloppy interpretation of those exhibits***, and other unsubstantiated matters of "fact" they proffer to contradict Lead Plaintiffs' claims and improperly draw inferences to resolve disputed questions of fact/inference in their favor. Regardless of the analysis *Tellabs* does require, the Federal Rules of Civil Procedure still govern and factual challenges to the Complaint are still improper at the pleading stage. *See City of Los Angeles*, 250 F.3d at 688-89. Defendants cite to certain exhibits for the truth of the matter asserted in them, which

is improper. *See Tercica, Inc. v. Insmed Inc.,* No. C 05-5027, 2006 WL 1626930, at *9 (N.D. Cal. June 9, 2006) ("Rule 201 does not permit the Court to take judicial notice of these documents for the truth of the matters asserted therein."); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (noting that although the court may take judicial notice of documents filed with the SEC, "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"); *accord Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2nd Cir. 1992) (district court improperly took judicial notice of filed documents because it used them "to establish facts asserted therein"); *State Farm Fire & Cas. Co. v. Westchester Inv. Co.*, 721 F. Supp. 1165, 1166 (C.D. Cal. 1989) (truth of argument contained in documents not judicially noticed).

Instead of challenging whether or not Lead Plaintiffs' allegations meet the relevant pleading standards, as they must at this stage of the litigation, Defendants attempt to inject their own version of the "facts" into the records and to thrust their own interpretation of those "facts" onto this Court as matters which are proper subjects of judicial notice. They also encourage the Court to improperly draw inferences from those "facts" that they urge are more "plausible" than inferences that can be drawn from matters alleged in the Complaint. Such an exercise is improper at this stage of the proceedings before discovery has commenced.

## V. CONCLUSION

For the reasons set forth herein, Defendants' request for judicial notice of Exhibits 3, 5, 6, 8, 9, 11 and 21 should be denied, those exhibits should be stricken from the record, and the "factual" assertions detailed herein at §II should be stricken from Defendants' Motion to Dismiss and not considered in resolving that motion.

DATED: March 31, 2010

Respectfully submitted,
SCOTT+SCOTT LLP

/s/ Mary K. Blasy
MARY K. BLASY
ARTHUR L. SHINGLER III
HAL D. CUNNINGHAM
DAVID GOLDBERGER
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
ashingler@scott-scott.com
mblasy@scott-scott.com
hcunningham@scott-scott.com
dgoldberger@scott-scott.com
– and –
DAVID R. SCOTT
P.O. Box 192
156 South Main Street
Colchester, CT  06415
Telephone:  860-537-3818
Facsimile: 860-537-4432
drscott@scott-scott.com

*Lead Counsel for Lead Plaintiffs*

LEAD PLAINTIFFS' MOTION TO STRIKE AND OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

1

No.  C-09-02147 JW-RS

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 31, 2010.

   /s/ Mary K. Blasy
MARY K. BLASY
SCOTT+SCOTT LLP
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619-233-4565
Fax: 619-233-0508
E-mail: mblasy@scott-scott.com