IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Sharon Hodges, et al., | NO. C 09-02147 JW |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| Akeena Solar, Inc., et al., | |
| Defendants. | |

Presently before the Court is Defendants' Motion to Dismiss Amended Complaint.[1] The Court finds it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES Defendants' Motion.

**A.   Background**

On May 18, 2009, Plaintiff Sharon Hodges filed this putative securities fraud class action against Defendant Akeena Solar, Inc. ("Akeena") for violations of the federal securities laws concerning alleged misrepresentations made by Akeena and certain officers and directors between December 26, 2007 and March 13, 2008. (See Docket Item No. 1.) On October 21, 2009, the Court appointed Plaintiffs Sharon Hodges, Joel Gentleman, and David H. Gordon as Co-Lead Plaintiffs

---

[1] (Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws, hereafter, "Motion," Docket Item No. 23.)

(collectively, "Plaintiffs") and Scott+Scott as Lead Counsel. (See Docket Item No. 14.) On December 11, 2009, Lead Plaintiffs filed an Amended Complaint.[2]

Presently before the Court is Defendants' Motion to Dismiss the Amended Complaint.

**B.    Standards**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

---

[2] (Amended Complaint for Violations of the Federal Securities Laws, hereafter, "AC," Docket Item No. 20.)

2

**C. Motion to Dismiss**

Defendants move to dismiss the First Cause of Action for Violation of Section 10(b) of the 1934 Act and Rule 10b-5 on the grounds that: (1) pre-Class Period statements are not actionable; (2) Plaintiffs have not adequately pleaded false statements; (3) Plaintiffs have not adequately pleaded loss causation; and (4) Plaintiffs have not adequately pleaded scienter. (Motion at 1.) The Court addresses each ground in turn.

**1. Pre-Class Period Statements**

Defendants contend that the numerous false statements allegedly made prior to the Class Period are not actionable. (Motion at 8.) Plaintiffs do not address this point directly, but merely contend that the pre-Class Period statements were false and misleading.[3]

A securities class action defendant is liable only for those statements made during the class period, not statement made before or after the class period. In re International Business Machines Corporate Sec. Litig., 163 F.3d 102, 107 (2d Cir. 1998); In re Clearly Canadian Sec. Litig., 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) (Walker, J.); see also Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1217 n.31 (1st Cir. 1996) (citing In re Clearly Canadian), superseded on other grounds as recognized by Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999); In re Sun Healthcare Group, Inc. Sec. Litig., 181 F. Supp. 2d 1283, 1293 (D.N.M. 2002).

Here, Plaintiffs allege the following false or misleading statements prior to the Class Period:

(1) On August 9, 2007, as part of its 2Q 2007 financial results, Defendant Akeena, through Defendant Cinnamon, announced that it had a backlog of $13.6 million worth of orders, and misleadingly implied that Akeena would be able to collect the money from residential customers within one or two months. (AC ¶¶ 40, 41, 82.)

(2) On September 24, 2007, Defendant Akeena announced its new state-of-the-art "Andalay" solar panel system, which it touted as a significant cost leader and profit enhancer. (AC ¶ 49.) Defendants failed to reveal that the Andalay had product defects that would prompt consumers to return solar panels as defective. (Id. ¶¶ 87-90.)

(3) In a separate release also disseminated on September 24, 2007, Defendant Akeena announced that it had entered into a lucrative strategic supply relationship with

---

[3] (See Opposition to Defendants' Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws at 13-20, hereafter, "Opposition," Docket Item No. 37.)

3

> China's Suntech for the Andalay solar panels. (AC ¶ 50.) What Defendants concealed was that Akeena had agreed to pay Suntech a much higher premium than the market price for the solar panels Suntech was providing warranted. (Id. ¶ 51.) Defendants withheld from the market the economic lunacy of the Suntech supply agreement. (Id.) The false and misleading statements Defendants made in the pre-Class Period remained alive in the market during the Class Period. (Id. ¶ 75.)

The Court finds that these allegedly false and misleading statements cannot serve as a basis for liability as a matter of law because they were made prior to the December 26, 2007 start of the Class Period.

Accordingly, the Court STRIKES the above statements from the Amended Complaint.

**2.    False or Misleading Statements**

Defendants contend that Plaintiffs have not adequately alleged any false statements during the Class Period. (Motion at 8-19.) Plaintiffs contend that their allegations as to the statements meet the pleading requirements for securities class actions. (Opposition at 13.)

Section 10(b) of the Exchange Act and SEC Rule 10b-5 prohibit material misstatements or omissions made with scienter in connection with the purchase price or sale, or in the offer or sale, of any security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; Ponce v. SEC, 345 F.3d 722, 729 (9th Cir. 2003). A claim under Section 10(b) and Rule 10b-5 requires (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) loss causation, and (6) resulting economic damage. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005). The Private Securities Litigation Reform Act requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1).

Here, Plaintiffs allege as follows:

> On December 26, 2007, Akeena announced that Comerica had increased Akeena's line of credit to $25 million, $17.5 million of which would be available on a "non-formula basis," and that the line of credit no longer contained the assets restrictions the prior line of credit had, leading many to conclude that because Comerica was also providing customer financing, Akeena's finances were transparent to Comerica and Comerica was validating Akeena's financial strength. (AC ¶¶ 46, 61.) On January 16, 2008 Defendants filed a Form 8-K with the SEC disclosing for the first time that the "increase" in the line of credit with Comerica was not really an increase at all, but a mere cash collateralization agreement

4

whereby Comerica merely agreed to increase Akeena's "line of credit" to the extent Akeena agreed to maintain a cash deposit with Comerica for the same amount. (Id. ¶ 81.)

Before the opening of trading on January 2, 2008, Akeena announced that it had entered into a lucrative licensing and distribution agreement with Suntech in which Akeena's Andalay product would be distributed in Europe, Japan, and Australia. (AC ¶ 65.) As part of the announcement, Defendant Cinnamon stated: "Suntech [has] extensive international distribution channels that are among the strongest in the industry. . . . [Akeena is] experiencing very strong demand for Andalay, and this licensing agreement with Suntech will allow us to meet our customer's needs for Andalay outside of our direct channels in the U.S." (Id.) Defendants concealed the actual terms of the Suntech licensing agreement. (Id. ¶ 72.) Critically, the licensing agreement provided no enforcement mechanism and provided Akeena with no legally enforceable rights to the royalty licensing payments. (Id.) On March 13, 2008, when asked about the Suntech licensing agreement . . . Defendant Effren conceded that "it's something that is going to be relatively small in 2008, I'd say, less than $1 million." (Id. ¶ 85.)

The Court finds that Plaintiffs have adequately alleged false or misleading statements. Plaintiffs have alleged (1) the particular statements that were misleading, and (2) the reasons why those statements were misleading. Defendants contend that the December 26, 2007 statement regarding the line of credit was not misleading because the announcement also stated that "[a]vailability of the increased funding capacity [was] subject to execution of final definitive loan documentation."[4] However, this qualification provides no indication that a significant restriction such as cash collateralization might be part of the agreement. At this stage, the Court finds Plaintiffs' allegation as to the credit announcement sufficient. Defendants also contend that the January 2, 2008 announcement of the licensing agreement was cured by a January 3, 2008 analyst report that stated that Akeena estimated that the agreement would result in approximately $1 million in revenue for 2008. (Motion at 17-18; Alepin Decl., Ex. 8.) However, this disclosure is, at best, a partial corrective disclosure, since it is unclear whether the report was disseminated or accessible to the entire market, and was a third party's analysis without citation to any source. Courts have held

---

[4] (Motion at 18-19; AC ¶ 61; Declaration of Dominique-Chantale Alepin in Support of Defendants' Motion to Dismiss Amended Complaint, Ex. 15, hereafter, "Alepin Decl.," Docket Item No. 24; Request for Judicial Notice in Support of Defendants' Motion to Dismiss Amended Complaint for Violations of the Federal Securities Laws, hereafter, "RJN," Docket Item No. 34.) The Court GRANTS Defendants' RJN as to exhibits 8 and 15 of the Alepin Declaration because those documents are referenced in the Complaint and their authenticity cannot reasonably be disputed. See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Fed. R. Evid. 201(b). The Court DENIES Defendants' RJN as to the remaining exhibits because the Court does not rely on them in its analysis. For these reasons, the Court also DENIES Lead Plaintiffs' Motion to Strike and Objection to Defendants' Request for Judicial Notice. (Docket Item No. 38.)

that partial disclosures do not end the class period—plaintiffs who purchased stock after such disclosures may maintain claims. See, e.g., In re LDK Solar Sec. Litig., 255 F.R.D. 519, 528 (N.D. Cal. 2009).

Accordingly, the Court DENIES Defendants' Motion as to this ground.

### 3. Loss Causation

Defendants contend that Plaintiffs have not adequately pleaded a causal connection between the alleged misrepresentations and Plaintiffs' economic loss. (Motion at 19-21.) Plaintiffs contend that they have pleaded numerous facts showing changes in the price of Akeena's stock after each of Defendants' announcements. (Opposition at 22-24.)

Proof of causation of economic loss is an element of a cause of action for securities fraud. See Dura Pharms., 544 U.S. at 338, 341. To establish loss causation, "the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). The allegations must provide "sufficient detail to give defendants ample notice of [the plaintiff's] loss causation theory, and to give [the court] some assurance that the theory has a basis in fact." Id. at 1056. Allegations that an announcement or press release by a defendant promptly caused a change in the price of the defendant's stock are sufficient to survive a motion to dismiss. See id. at 1056.

Here, Plaintiffs allege as follows:

> On December 26, 2007, Defendants announced their increased line of credit with Comerica. (AC ¶ 46.) Akeena's stock price rose precipitously on this news, increasing from an opening price of $6.84 per share to close at $8.10 per share on December 26, 2007, on unusually high volume of more than six times the average daily trading volume for the previous 30 days. (Id. ¶ 63.)
> Before the opening of trading on January 2, 2008, Akeena announced that it had entered into a lucrative licensing and distribution agreement with Suntech. (AC ¶ 65.) This announcement caused Akeena's stock price to increase over 40% to close at $11.45 on more than 15 million shares trading on January 2, 2008. (Id. ¶ 66.)
> On January 16, 2008 Akeena's stock price "continued plummeting" when Defendants filed a Form 8-K with the SEC disclosing for the first time that the line of credit with Comerica was not really an increase at all, but a mere cash collateralization. (AC ¶ 81.)
> After the March 13, 2008 announcement by Effren, Akeena's stock fell 8.4 percent in NASDAQ stock market composite trading of 2.18 million shares. (Id. ¶ 86.)

6

Based on the allegations above, the Court finds that Plaintiffs have pleaded sufficient facts to show loss causation. Plaintiffs have alleged that certain statements by Defendants caused Akeena's stock price to become artificially inflated and eventually, to decline. These allegations provide sufficient detail to give Defendants ample notice of Plaintiffs' loss causation theory.

Accordingly, the Court DENIES Defendants' Motion as to this ground.

**4.     Scienter**

Defendants contend that Plaintiffs have not sufficiently pleaded facts showing that Defendants possessed the requisite state of mind to support a claim for securities fraud. (Motion at 21-25.) Plaintiffs contend that the allegations, taken as a whole, show the requisite mental state, and that allegations of Defendant Cinnamon's sales of a large amount of stock in early January support its position. (Opposition at 11-12, 21-22.)

To support a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008) (citing 15 U.S.C. § 78u-4(b)(2)). The Supreme Court has expressed this requirement as requiring the court to ask "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" South Ferry, 542 F.3d at 782 (quoting Tellabs, Inc. v. Makor Issues and Rights, Ltd., 551 U.S. 308 (2007)).

A court should look to the complaint as a whole—not to each individual scienter allegation—and consider the totality of circumstances. South Ferry, 542 F.3d at 784. Whether defendants were key officers in the company, and therefore had knowledge of and access to information about the business' core operations, weighs in favor of finding an inference of scienter if it is supported by "details about the defendants' access to information within the company." Id. at 784-85. Additionally, unusual stock sales by insiders support an inference of scienter if they are "dramatically out of line with prior trading practices at times calculated to maximize the personal

7

benefit from undisclosed inside information." See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003).

Here, Plaintiffs allege as follows:

> Akeena was founded by Defendant Barry Cinnamon in 2001 and is headquartered in Los Gatos, California. (AC ¶ 32.) On January 2, 2008, taking advantage of Akeena's inflated stock price after the Suntech license announcement, Defendant Cinnamon sold 100,000 shares of Akeena stock for $11.12 per share, for $1,112,000 in proceeds, and on January 7, 2008, Defendant Cinnamon sold another 300,000 shares of Akeena stock at $15 per share, for $4,500,000 in proceeds. (Id. ¶ 73)

> Defendant Gary Effren was Chief Financial Officer of Akeena from September 21, 2007 through the end of the Class Period. (AC ¶¶ 30, 47.) Effren was thoroughly knowledgeable about all aspects of Akeena's business operations as he received daily reports regarding sales, demand, product quality, and customer service and financing issues. (Id. ¶ 30.) Effren was also intimately involved in the preparation of Akeena's financial statements and projections, including the amounts of backlog, inventory, warranty accruals and what disclosures would be made, and the functioning of Akeena's internal financial, accounting and disclosure controls. (Id.) Effren also knew of the terms of the purported line of credit "increase" announced on December 26, 2007. (Id.) He reviewed and approved Akeena's SEC filings with the SEC as well as its Sarbanes-Oxley certificates. (Id.)

Based on the allegations above, the Court finds that Plaintiffs have pleaded sufficient facts to establish scienter. Taken as true, the allegations show Defendant Effren's intimate knowledge of Akeena's core business operations and financial statements and projections. More significantly, if proven true, the allegations that Defendant Cinnamon sold his stock at or near the two critical announcements would demonstrate "unusual stock sales." Defendants contend that Defendant Cinnamon's sales were not suspicious because they were done pursuant to a 10b5-1 trading plan that Cinnamon entered into in late 2007 pursuant to a settlement agreement with his wife as part of their divorce. (Opposition at 23-24.) However, the factual question of whether Defendant Cinnamon sold his stock pursuant to such an agreement is an issue appropriately resolved on summary judgment.

Accordingly, the Court DENIES Defendants' Motion as to this ground.

**D. Conclusion**

The Court DENIES Defendant's Motion to Dismiss.

The parties shall appear for a Case Management Conference on **June 14, 2010 at 10 a.m.** On or before **June 4, 2010**, the parties shall file a Joint Case Management Statement. The Statement

8

shall include the parties' proposed schedule on how the case should proceed, including a proposed date for the close of all discovery, and an update on the parties' settlement efforts.

Dated: May 20, 2010

JAMES WARE
United States District Judge

9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Arthur L. Shingler ashingler@scott-scott.com
Benjamin Matthew Crosson bcrosson@wsgr.com
David R. Scott drscott@scott-scott.com
Dominique Chantale Alepin dalepin@wsgr.com
Hal Davis Cunningham hcunningham@scott-scott.com
Kelley Moohr Kinney kkinney@wsgr.com
Laurence M. Rosen lrosen@rosenlegal.com
Mary K. Blasy mblasy@scott-scott.com

Dated: May 20, 2010           Richard W. Wieking, Clerk

                              By:     /s/ JW Chambers
                                    **Elizabeth Garcia**
                                    **Courtroom Deputy**